1-18-0253 Delilah Coleman v. Santa Claus Council may proceed. Good morning, Your Honors Council. I'm Amy Williams-Mondage, 4th Plaintiff Appellant. I am battling a significant sinus infection here, so I hope you all will bear with me and let me know if you can't hear my remarks. I've prepared some truncated remarks today based on my current condition. I have three major points that I wanted to raise with you today. The first is that there was no finding of maximum medical improvement aids in the first commission decision. The Holger and Lukasik cases instruct us that just because there is a denial of TTE, there is not a de facto finding of MMI. TTE may terminate before the claimant has recovered to the full extent and able to return to the workers while continuing medical treatment. I, Dr. Butler, upon whose causal connection and identification were not in this first decision, recommended such further treatment to the shoulder after this alleged MMI date. The second major point that I want to raise with you, Your Honors, today is about the order for surgery that occurred in between the trial testimony and the return for the closing of proofs with the one medical bill. This order for surgery could not have been brought at the first trial for two reasons. The first is that if all attorneys agreed on the record on multiple occasions in the record, the proofs will only be held open for one medical bill with all other students being entered on that initial hearing date. The second reason is that this, to request to enter the surgery order, would have violated year and section 19B1. The defendant in this case cites to the loser case to argue that I should have requested good cause to hold proofs open again to enter this order for surgery. 19B1 specifically states that if, after hearing, material information is discovered which was not previously disclosed, the arbitrator may extend the time for closing proofs. So this is the difference between our case and the LaRusso case. In the LaRusso case, an intervening motor vehicle accident was actually discovered during the trial testimony. And so before fines were restored to 19B1, because there is this discovery of material information during the hearing that they should have requested proofs to be left open for more information. But in our case, there is no such discovery of this material information during the trial that would have allowed us to go outside of the rules provided in section 19B1. Just a point of curiosity here, you could have requested the arbitrator extend the time for closing the proof to give a sufficient time to reduce the evidence, right? I'm sorry, Your Honor. Did you have the opportunity, are you talking about Dr. Salim's initial surgical recommendation? I have not. And that was made six days before the final arbitration hearing, correct? When we returned the closed proofs to the court earlier on. Right. So you could have, I suppose, moved and asked that it be extended the time to give you additional time, correct? My argument is that pursuant to section 19B1, I could not do that, Your Honor, because section 19B1 provides that I could only request that extension if there was something discovered during the hearing. And that is not something that came up during our hearing, our testimony at our initial hearing in section 19B1. Well, it didn't come up in your initial hearing, but it was continued. Proofs were not closed after the initial hearing. There was a second hearing there. Granted, it was supposed to be only for the submission of a single medical bill, but proofs had not been closed. So the hearing was still going on. So, I mean, you could have asked for the extension. The question is, are you precluded from now presenting it because you didn't? And, again, Your Honor, I would direct you to the language of section 19B1 and to Geeter with regards to evidence having to be provided before the start of trial. So I would have violated both Geeter and section 19B1. This is no evidence not previously identified by either the client with the petition for 19B1 or the written response or by any other means before the start of the hearing to be introduced into evidence without good cause. And then it goes on to define that with regard to material information discovered, which was not previously disclosed before the start of the hearing. Can I ask you a question? Yes. What about this law of the case doctrine that was relied on by the commission for the denial of additional TTT benefits? What's your response to it? My response to this is that there was no finding of MMI to be held as law of the case because there was... But there was a denial of TTT benefits after June 30, 2014, through September 30, the last hearing date. Correct. So, go ahead. And the case law from Hollader and Lukasak that I've cited too extensively explains that that is not a de facto finding of MMI. It doesn't have to be a finding of MMI. The question is, are you entitled to TTT benefits for any period prior to October 1st? You contend that you want it back to what? September 24th? Which is the date that she sees the doctor. Except for one problem. You were denied TTT benefits in the February 9, 2015 decision for any benefits after June 30, 2014, and that would run through the date of the arbitration hearing. The last date was September 30th. So, at minimum, the law of the case doctrine would prohibit you from obtaining any TTT benefits prior to October 1st of 2014. You can't get September 24th to October 1st. That was already decided in the first hearing. And I guess what my argument would be, Your Honor, is that if you look at our agreements on the records of why groups were being held open, we were limiting ourselves to everything that occurred up until we took that testimony on September 12th. We were only returning because there was an error in getting a bill from the hospital. All other medical evidence and documentary evidence was entered on that September 12th date. The fact of the matter is, you were denied any TTT benefits post-June 30, 2014. Now, that arbitrator's decision, when he issues it, speaks from the last day of arbitration. That's September 30th. So you were denied TTT benefits post-June 30th. So how can you get TTT benefits from September 24th to October 1st? Post-October 1st, there's no question, law of the case does not bar it. So it's just those six days? Six days. I just don't understand how you can get to six days. I can understand that. I mean, there's no law of the case post-October 1st. I mean, they just didn't rule on it. I appreciate Your Honor's point with regards to the six days. I think, as I said, all I can speak to is, in the minds of what we were doing that day, we had finished our case on September 12th, and that was the date that we were all going by. Okay. The only other point, the third point that I wanted to make sure that I addressed with Your Honors this morning, is the factional point that there was no evidence of MMI entered as to the September 12th, 2013 injury in this case. Both I and Dr. Rotherham, treating physician Dr. Slain, Rotherham had further shoulder treatment, and this evidence was unrebutted by the defendant. The defendant did not actually enter an MMI opinion for the date of injury September 12th, 2013. As I said, I did make my remarks quite brief today. I'd be happy to attempt to answer any other questions that Your Honors may have. I don't believe there are. You'll have time in reply. Thank you, Your Honor. Thank you. Thank you. Counsel, you may respond. Your Honors, I may please report. My name is Matthew Rutusik. I'm here on behalf of Stan's Club, and I'm here to ask that this commission do two things. First, I'd like the commission to consider throwing out the petition for our appeal on the grounds that the petitioner failed to comply with Illinois Superior Court's rule 34187 by failing to include the limited brief argument in the citation to authority and the pages relied upon. Second, I would like to ask that this commission in the alternative firm can adopt the decision of the industrial commission. I'm sorry, the workers' consultation commission. To my first point, this is not in our brief, and I'm only presenting it here today because there has been an ongoing misrepresentation about the facts. In this case, it's continued in the petitioner's brief and was presented again today. The petitioner routinely claims that Dr. Butler provided an opinion with the commission relied upon with regard to the right shoulder that found the condition to be causally related and in need of additional medical treatment, and this couldn't be further from the truth. You will find this argument in the petitioner's brief on pages 13 and 14. Quite frankly, Dr. Butler is a spine surgeon. His facility is called Spine Institute. He asked to evaluate the spine. Certainly, he provided an opinion that the in need of treatment of the condition wasn't due to the spine. It was due to a shoulder, but there is nothing in his opinion, nor the commission's decision or the arbitration decision on the first hearing, that found that Dr. Butler provided an opinion on the right shoulder, that additional medical treatment was required for the right shoulder. The petitioner simply failed to meet her version of truth. This is further implicated by the fact that the petitioner has argued that there are no work restrictions or no evidence after March 2014 with regards to the petitioner's ongoing condition. At the time of the first hearing, that's absolutely correct. In the first hearing, the commission could only consider the evidence that was presented to it. There hadn't been an evaluation on the right shoulder since March of 2014, but for Dr. Hoffner's independent medical examination on the right shoulder, and a comment made by Dr. Butler subsequently during his independent medical examination of the surgical spine. In Dr. Hoffner's opinion, I'm sorry, in his report, which the commission relies upon in its determination of TTP benefits, that Dr. Hoffner reviewed the MRI findings contrary to the arguments of the petitioner. Who's Dr. Salim? I understand your points on those doctors. Who's Dr. Salim? Dr. Salim is a treating physician that evaluated the petition before and after the accident for the right shoulder. Okay, and he recommended the surgery, correct? Yes. On September 14th, I believe it was, I'm sorry, September 24th, he does recommend a surgery. That opinion was not submitted at trial at the first hearing. It could have been. But it ultimately was submitted, correct? It was only after the first trial had concluded it was submitted at the time of the second hearing. Wait a minute. It's one trial. It's one hearing. One trial, right. Held in two days. They're not two separate hearings. Forgive me, Your Honor. There's actually been two hearings before the recovery. We understand there were two hearing dates, but the proofs weren't closed until after the second hearing date. That is correct, but subsequently to that, that case went on appeal to the commission. It was no longer appealed to follow the commission's decision. Subsequently, a 19-D hearing was held, at which time that subsequent 19-D hearing, the first time Dr. Slater's opinion would be introduced into evidence. And that opinion was subsequently admitted pursuant to Section 16 of the Act, which allows medical records to be submitted. But at the same time, the commission found that the argument was vague because it existed at the time of the first hearing, the 19-D-1 hearing, which did not close until September 30th, 2014. And the petitioner made absolutely no effort to bring that to the defense, to the respondents' attention, or the arbitrators' attention at the time of the hearing. Petitioner argues that, I'm sorry, the teller argues that there's nothing they could do, that they could have simply, that they were bound by some agreement that the only reason they were coming back on September 30th was to introduce a medical bill, when this appellate court had routinely held that the parties' stipulations cannot bind the commission. Certainly, the petitioner had an obligation to inform the commission, to inform the parties, that he did, I'm sorry, that she had in that undergone additional medical treatment. Well, without taking issue to what you just said on that thought, let me ask you this question, a very blunt question. What was the prejudice to Sam's Club by reason of she having it raised at prospective surgery for the first time on October 15th? How did that prejudice Sam's Club? How did it prejudice? Because it was an issue, it was a fact, an issue at the time of the first hearing. Well, but wait a minute. Excuse me. Doesn't the act require you to pay for all medical treatment necessary to cure the ill being suffered by an employee as a result of an employment accident? Yes, and it's proved to be causally related. Yes, so now the question is, is the right shoulder surgery causally related to the injury she suffered at work? That would have been an interesting argument to make at the time of the first hearing. But she made it in the second hearing, and what did the commission find? The commission found that it was not. No, they didn't find it. They found it was waived. I'm sorry. Yes, correct. They didn't find it wasn't connected. Now, don't you think that this is a remedial statute that's supposed to be liberally construed. If that right shoulder actually, the injury to that right shoulder actually is causally related to her work accident, you have an obligation to pay for it, period, under the act. And waiver is not an issue that binds the court. No, Your Honor, I have an obligation to pay for it if the petition makes it curb or improve to prove that the condition is remedial. Well, Salim said it was. Salim is a doctor. He is not the prior effect. Who said it wasn't? I'm sorry. Who said it wasn't? Which doctor said it wasn't? Dr. Hoffner. Dr. Hoffner says on June 30, 2001. And did the commission ever decide which they were going to believe, Hoffner or Salim, or did they just say it's waived? No, because it was denied the opportunity at the time of the 1981 hearing because the petitioner did not prove or present any evidence that she had on Rochelle. At that time, that was what she did in the second hearing. It was going back and forth to where we started. In the second hearing, as part of the same trial, it was introduced, correct? You've acknowledged that. Are you referring to the second hearing or are you referring to the September 30th date, Your Honor? The second date. The second date, not the first date. I think that's obvious. It was not introduced at the first opportunity, correct? That is correct. And certainly it presented at the time of the second hearing. That's right. But the issue was waived by the fact that the petitioner should have presented at the time. So we're really talking about what is preclusive, if any, effect on this court as to waiver. Your Honor, if the commission was going to waive that evidence, it should have done so at the time of the 1981 hearing where causation was added. Well, basically, it never did waive that evidence, am I correct? Correct. Okay. But at the 1981 hearing, the petitioner... Because they said, we're not going to go there because it's waived, right? I'm sorry? Correct. They said they're not going to go there and make a finding because they ruled it was waived. Correct. Okay. But you don't understand that's not binding on us. I want to understand something. In the decision following the September 12th and September 30th hearing, the commissioners found that her current condition of ill-being in her right shoulder is causally related to her work accident, rejecting Hoffner's contrary opinion, did they not? No, Your Honor. They didn't? Correct. Wait a minute. I'll read it to you. They said we found the condition is causally related. Exactly right. Hoffner says it wasn't. Hoffner says it wasn't. Right. So they rejected his opinion, didn't they? In part. Yes. They didn't reject that portion of his opinion that said he could work. Correct. Okay. But they rejected his opinion on causation. So we've got an opinion that says the condition of ill-being in his right shoulder is causally related to his work accident. Why are you not liable for paying all medical bills attendant to that injury? Besides waiver. You're going to say waiver. What about the merits? Why are you not liable legally? Because there has not been a finding by the commission that we are liable for those bills. Well, of course there is. Not for the bills. There's been a finding by the commission that you're liable for a condition of ill-being caused by an injury while she was working for you. Okay. Then let me clarify. Because at the time of the September 30th hearing, there is no evidence that the petitioner's right shoulder had any problems. She had not been seen. Which hearing date is that? The first hearing date? September 30th. Is that the first hearing date? September 30th of 2014 is the date of full proof following the 1931 hearing. Okay. Yes? So at the time of the September hearings in 2014, there was no evidence of any recommendation for additional treatment on that. We understand that. And then it comes six days before proofs are closed. And then subsequent to that decision, he issued the opinion again. He issued it a second time before the hearing in October, didn't he? Yes. Okay. So why couldn't they rely on the second opinion that she needed the operation in awarding the prospective medical? If the petitioner's condition had somehow changed, maybe they could have. But the fact of the matter is, Dr. Salim's initial opinion regarding the MRI study, if you look at it, the July 30th, 2014 medical record from Dr. Salim evaluates the MRI study. This is a record that was not introduced at the time of the 1931 hearing in September 2014. It was, however, submitted into evidence at the time of the 2013 hearing. In that record, Dr. Salim reviews the MRI study, and he says, and I quote, that the petitioner had, once again, I review the MRI scan. There are no signs of any worthiness of that value or concern for laboral care, which is absolutely 100 percent consistent with the opinion given by Dr. Hoffman. Dr. Salim thus changes his opinion at a later date and argues that there is evidence on that MRI. Well, wouldn't that go to the credibility and the weight of the opinion? It's still admissible, isn't it? Oh, the medical record can be reviewed, yes, but it can't have any recommendation to put nothing to lie about simply because of the weight. Your answer is waiver to all issues. Okay, I get it. Waiver is your only argument because the commission never ruled on it. That's your only argument. Commission never ruled and said that Salim was wrong, Hoffman was right. The only thing they found Hoffman was correct about was that the guy could work as of June the 30th. Your argument is waiver and only waiver. Nothing else. Commission didn't rule on anything else. Well, actually the commission found that by implication the petitioner was at maximum medical improvement. Totally wrong. That was not Hoffman's testimony. He didn't once say that the man had reached maximum medical improvement. The only thing Hoffman said was he could work without restrictions. He was capable of working. Oh, and by the way, and he said there was no right shoulder injury to begin with, which they rejected. On page C405 of the record, Dr. Hoffman was asked to respond, please indicate whether the petitioner had reached MMI for her right shoulder and her cervical condition and did not mention he would be accepted to do so. Dr. Hoffman responded, with respect to the right shoulder condition, Ms. Olay underwent identification of specific shoulder pathology and cervical condition in February 2013. She reached maximum medical improvement one year later and reported an injury and treatment rendered by Dr. Salim. Now what date is that report? That is a June 30th, 2014 report found on page C405 of the record. Okay. Now what the committee in the commission decision, it does refer to the finding, I'm sorry, the commission decision for 2017. The commission found that the petitioner had reached maximum medical improvement as of June 2014, pursuant to the opinion of Dr. Hoffman. And this is consistent with the finding of the legislation, I'm sorry, legal precedent on the law to change doctrines. The law to change doctrines in total decision courts explicit decision and issues decided on a necessary occasion. And as of the September 30th, 2014 closure of proofs on the 19B1 error, there had not been any medical record for the last six months prior to that date with regard to right shoulder condition. I know. I know what I want you to comment on. Okay. In the original decision of the arbitrator, which the commission adopted, the arbitrator made no finding that this person had reached MMI. The commission made no finding they'd reached MMI. In determining that the TTD would end on June the 30th, the arbitrator relied on a portion of Hoffman's opinion. Quote, Dr. Hoffman examined the claimant on June the 30th, 2014. At that time and with regard to the claimant's right shoulder condition, he released the claimant to return to work without restrictions. Accordingly, the arbitrator finds that the claimant is entitled to TTD benefits from May the 30th through June the 30th. Not because she received MMI. Subsequent TTD benefits because she was capable of returning to work without restriction. And once an injured employee is capable of returning to work without restriction, whether they have reached MMI or not, TTD ends. So there was no finding of MMI in the first decision. In the second decision, the commission turns around and says, in the first decision we found that she reached MMI. They made no such finding. There was no such finding. Following the arbitration hearing on October the 15th, the arbitrator issues a decision saying that the current condition of the ill-being is causally related, awards additional TTD, which was entitled to due, although for a period of September 24th through December the 22nd, and you've got a legitimate law of the case argument for six days, and awards prospective medical care. You file a petition of review. The commission found that the claimant's right shoulder condition as of October 15th was not causally related to her September 20th, 12th injury, accident September 12th, and concluded she wasn't entitled to further medical or TTD. They held that in denying TTB benefits after June the 30th in their first decision, they determined that they reached MMI. They made no such determination. You won't find it anywhere in that decision, will you? That's correct. Okay. But what the court has said, this is what the court has said, specifically the second district being Raleigh versus Gerardo, or Gerando, is that the law of the case doctrine encompasses both a decision as well as issues decided by a necessary implication. Why is MMI decided by necessary implication if an injured employee is not entitled to TTD benefits if they are capable of returning to work without restriction, without regard to whether they've reached MMI? That alone would not be sufficient, Your Honor. What are you talking about? Of course it is. I'm sorry. Can you repeat the question? Yeah. Why would it have been implicit in their original decision that she reached MMI if an injured employee is not entitled to TTD benefits once they are capable of returning to work without restriction, irrespective of the fact of whether they've reached MMI? So why is it implicit in the decision? They said in the decision why they terminated the MMI, or why they terminated the TTD benefits, and it wasn't because of MMI. And MMI is not implicit in the termination if she's capable of working without restriction. And often said she was. And that's what they relied on. Why is it implicit? I'm sorry. You're asking why it's causation? No. Why is MMI implicit in their finding? In the second decision, the commission waived the totality of the facts in the first case. In the first case, there was no evidence of any ongoing treatment for the wrecked shoulder. There was no evidence of any ongoing complaints. The petitioner herself didn't testify at trial that she had any ongoing issues with regard to the wrecked shoulder. But that's not why they decided it. They never made that decision. What did they say is their reason for not awarding any TTD benefits post-June 30, 2014? They relied on Dr. Hoffman's opinion that the petitioner was capable of working. What did they say? Let's read what they said. Let's go to the decision and see exactly what they said about this. No, that's the first decision. I'm not talking about that. Let's go to the commission's second decision. Why does the commission reverse the award of TTD benefits from the arbitrator? But that's not why they terminated on June 30. On June 30, is it? They terminated it only because she could go back to work. Yes, but subsequently they further implied that as of that date she would have actual medical improvement. Okay, finish your statement and then you're way out of time. Very good. To finish the quote there, the commission says, and therefore, so accordingly, I'm sorry, I think the commission then considered a totality of facts, which includes the lack of medical record or testimony with regard to ongoing treatment, an issue where prospective medical treatment was at issue with physician or family member. Thank you. Thank you, counsel. Counsel, you may reply. Thank you, your honors. I just want to take issue with one point that was repeated during counsel's argument, which is that at the time of the initial trial in September 2014, there was no evidence of a need for ongoing right shoulder treatment. Petition is evaluated by respondent's IV physician, Dr. Butler, on August 13th of 2014, a little over a month before the trial, and Dr. Butler is the one that says, I think this is actually a shoulder problem. She needs to have more evaluation of the shoulder. So respondent's own physician, who is relied on by the commission in first decision, finds that she does need further evaluation of the shoulder. Dr. Butler actually communicated this to petitioner, which is why she then followed up with Dr. Selene following that hearing. It's very clear, based upon the arbitrator's conclusions of law, that he does rely on Dr. Butler's opinion with regards to the shoulder. If you go through and you look at the decision, you will see the arbitrator and the commission in the first decision is relying upon the fact that Dr. Butler said she did still have a problem in the shoulder, and he was concerned about why Dr. Butler didn't recognize that. And the same in the arbitrator's second decision, he makes it very clear what his reasoning was when he reached those conclusions in the first case, and I think it's really important that we have the benefit of that reasoning, and we can see that he did rely on Dr. Butler with regards to the right shoulder  Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken on advisement. Written disposition shall issue.